**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on June 25, 2020, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: June 25, 2020**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BRAD FRIEDLANDER, | ) | Case No. 19-12300 |
|   Debtor. | ) | |
| ——————————————— | ) | Judge Arthur I. Harris |
| | ) | |
| KAPITUS SERVICING, INC., | ) | |
|   Plaintiff. | ) | Adversary Proceeding |
| | ) | No. 19-1070 |
| v. | ) | |
| | ) | |
| BRAD FRIEDLANDER, | ) | |
|   Defendant. | ) | |

## MEMORANDUM OF OPINION[1]

This proceeding is currently before the Court on the motion for summary

judgment (Docket No. 17) of plaintiff-creditor Kapitus Servicing, Inc.

("the creditor").  The creditor contends that it is entitled to summary judgment in

---

[1] This Opinion is not intended for official publication.

this nondischargeability action against Brad Friedlander ("the debtor") under

11 U.S.C. § 523(a) because the debtor made intentional misrepresentations

respecting the financial condition of BJRP, LLC ("BJRP") to induce the creditor to

enter into a merchant funding agreement that the debtor violated and had no

intention to repay.  For the reasons that follow, the creditor's motion for summary

judgment is denied.

## JURISDICTION

This Court has jurisdiction over the claims in this proceeding.

Determinations of dischargeability under 11 U.S.C. § 523 are core proceedings

under 28 U.S.C. § 157(b)(2)(I) and Local General Order No. 2012-7, entered by the

United States District Court for the Northern District of Ohio.  In addition, both the

creditor and the debtor have expressly consented to the bankruptcy court entering a

final judgment (Docket Nos. 1, 4).  *See Wellness Intern. Network, Ltd. v. Sharif*,

135 S. Ct. 1932, 1949 (2015).

## FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated, the following facts are not in dispute.  On

May 3, 2018, the debtor executed a merchant funding application

("the application") with the creditor on behalf of BJRP.  The debtor is the CEO of

BJRP.  The application initiated a deal by which BJRP would sell receivables to

the creditor in return for merchant funding.  The creditor and the debtor have both

provided a copy of what they claim to be the true and correct application. The forms provided are substantially similar, although they differ slightly in what information is required and what information was provided by the debtor. The application provided by the creditor does not include information concerning other ownership interests and existing merchant funding of BJRP (Docket No. 17, Exhibit B). The application provided by the debtor does not require other ownership interests below 49% to be disclosed and contains financial information concerning BJRP's monthly sales that the creditor's form lacks. The debtor's form is also missing any disclosure of existing merchant funding (Docket No. 26, Exhibit 1).

In early May of 2018, after the debtor executed the application, the debtor participated in a telephone call ("the funding call") with the creditor. During the funding call, the creditor asked several follow up questions respecting the financial condition of BJRP to complete the application process (Docket No. 26, Exhibit 2).

On May 7, 2018, the debtor and the creditor executed a merchant funding agreement ("the agreement") (Docket No. 17, Exhibit A). The agreement states, in pertinent part:

> **1.1 Merchant Deposit Agreement**. Merchant shall execute an agreement ("the <u>Merchant Deposit Agreement</u>") acceptable to FUNDER, with a bank acceptable to FUNDER, to obtain electronic fund transfer services. Merchant shall provide FUNDER and/or its authorized agent with all the information, authorizations necessary for verifying Merchant's receivables, receipts and deposits into the

3

account. Merchant shall authorize FUNDER and/or its agent to deduct the amounts owed to FUNDER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant by permitting FUNDER to withdraw the specific daily amount credited against the specified percentages by ACH debit of the Merchant account. The authorization shall be irrevocable without the written consent of FUNDER.

. . . .

**2.1 Financial Condition and Financial Information**. Its bank and financial statements, copies of which have been furnished to FUNDER, and future statements which will be furnished hereafter at the discretion of FUNDER, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise FUNDER of any material change in its financial condition, operation or ownership. Funder may request statements at any time during the performance of this Agreement and the Merchant shall provide them to FUNDER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

. . . .

**2.7 Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis.

. . . .

**2.9 No Bankruptcy or Insolvency.** As of the date of this Agreement, Merchant represents that it is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. . . .

**2.10 Additional Financing. Merchant shall not enter into any arrangement, agreement or commitment for any additional**

4

**financing, whether in the form of a purchase of receivables or a loan to the business with any party other than FUNDER without their written permission.**

**2.11 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of FUNDER.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

. . . .

After the agreement was executed, the debtor opened the bank account required by section 1.1 of the agreement at Peoples Bank, now named Ohio Commerce Bank. The creditor then transferred the funds into the debtor's account under the terms of the agreement.

On September 28, 2018, BJRP filed a voluntary petition under Chapter 11 of the Bankruptcy Code. *In re BJRP LLC*, Case No. 18-15839, N.D. Ohio. The debtor signed the Chapter 11 bankruptcy petition as the CEO of BJRP. On April 17, 2019, the debtor filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code (Case No. 19-12300). On the debtor's Schedule E/F filed with the petition, the debtor lists a debt of $449,912 owed to Advance American

5

Business Solutions based on a personal guaranty of business debt in 2018. The debt is not scheduled as contingent, unliquidated, or disputed (Case No. 19-12300, Docket No. 1). Advance American Business Solutions appears to be an earlier name for the plaintiff-creditor in this adversary proceeding (Adv. No. 19-0107, Docket No. 1).

On July 18, 2019, the creditor filed this adversary proceeding against the debtor objecting to the debtor's discharge pursuant to 11 U.S.C. § 523(a) (Adv. No. 19-1070, Docket No. 1). Count one of the creditor's complaint seeks a determination that the debtor owes the creditor the balance due under the agreement and that the debt is nondischargeable in the debtor's bankruptcy case. The creditor also seeks money damages for funds obtained through false pretenses, false representation, or actual fraud under 11 U.S.C. § 523(a)(2)(A). Count two seeks a judgment of nondischargeability and money damages for false statements made in writing by the debtor respecting the financial condition of BJRP under § 523(a)(2)(B). Count three seeks a judgment of nondischargeability and money damages for defalcation, embezzlement, or larceny under § 523(a)(4). Count four seeks a judgment of nondischargeability and money damages for willful and malicious injury under § 523(a)(6). On August 19, 2019, the debtor filed his answer to the complaint (Docket No. 4).

6

On March 19, 2020, the creditor filed a motion for summary judgment seeking a determination of nondischargeability and an award of attorney's fees (Docket No. 17).  On May 21, 2020, the debtor filed his response to the creditor's motion for summary judgment, arguing that disputes of material fact exist and therefore the creditor is not entitled to summary judgment (Docket No. 26).  The debtor himself has not moved for summary judgment.

SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed R. Bankr. P. 7056.  Although Rule 56 was amended in 2010, the amendments did not substantively change the summary judgment standard.  *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).  "A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations."  *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012).  "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party."  *Id.* at 570.  "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving

7

party.' " *Yeschick v. Mineta*, 675 F.3d 622, 632 (6th Cir. 2012) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## DISCUSSION

The creditor asserts in its complaint that it is entitled to a judgment of

nondischargeability concerning the amount owed to it by the debtor under

§§ 523(a)(2)(A), (a)(2)(B), (a)(4), or (a)(6), money damages in the amount of

$447,241.00, and attorney's fees.  The creditor's motion for summary judgment

does not mention the claim for money damages.  At this point, the creditor has not

obtained an award of money damages against the debtor and has not pleaded facts

to establish the amount of the debt owed by the debtor or the legal grounds for

such an award.  Thus, the question in this proceeding is only whether any portion

of the debt owed to the creditor survives the debtor's Chapter 7 discharge under

11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), or (a)(6).

*Count One—Dischargeability Under 11 U.S.C. § 523(a)(2)(A)*

Section 523 provides in pertinent part:

(a) A discharge under section 727 . . .  of this title does not discharge
an individual debtor from any debt—
. . . .
(2) for money, property, services, or an extension, renewal, or
refinancing of credit, to the extent obtained by—
(A) false pretenses, a false representation, or actual fraud,
other than a statement respecting the debtor's or an
insider's financial condition . . . .

8

To except a debt from discharge under § 523(a)(2)(A), a creditor must prove: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir. 1998). The creditor must demonstrate justifiable reliance under this section and need not pass the higher standard of reasonable reliance. *Field v. Mans*, 516 U.S. 59, 74–75 (1995).

Section 523(a)(2)(A) expressly excludes all statements respecting a debtor's financial condition, whether written or oral, as a basis for nondischargeability. *Prim Capital Corp. v. May (In re May)*, 368 B.R. 85, 2007 WL 2052185, at *5 (B.A.P. 6th Cir. 2007). Instead, statements respecting a debtor's financial condition fall under § 523(a)(2)(B). A debt based upon an oral misrepresentation of financial condition is not actionable and will be dischargeable. *Id*. The United States Supreme Court has recently held that the term "statement . . . respecting the debtor's . . . financial condition" should be interpreted very broadly, encompassing even a statement about a single asset. *Archer, Lamar & Cofrin v. Appling*, 138 S.Ct. 1752, 1764 (2018). Justice Sotomayor explained that creditors still benefit from the protection of § 523(a)(2)(B) so long as they insist that the

9

representations respecting the debtor's financial condition on which they rely in extending money, property, services, or credit are made in writing. *Id.* Doing so will likely redound to their benefit, as such writings can foster accuracy at the outset of a transaction, reduce the incidence of fraud, and facilitate the more predictable, fair, and efficient resolution of any subsequent dispute. *Id.*

There are genuine disputes of material fact in this proceeding. There are disputes regarding which application is the true and correct application, what was said during the funding call, and the meaning of the agreement's provisions. There are also disputes regarding what statements made by the debtor could be justifiably relied upon by the creditor. Many of the disputed statements, however, are not encompassed by § 523(a)(2)(A).

Statements or omissions contained within the application and agreement addressing the financial condition, assets, and liabilities of BJRP constitute written statements respecting a debtor's or an insider's financial condition. Because § 523(a)(2)(A) does not encompass written or oral statements respecting a debtor's or insider's financial condition, the statements or omissions within the application and agreement respecting the financial condition of BJRP should be evaluated under § 523(a)(2)(B). A debt based upon an oral misrepresentation of financial condition is not actionable and will be dischargeable. *In re May*, at *5. Therefore,

10

any oral misstatements made during the funding call respecting BJRP's financial condition are not actionable under § 523(a)(2)(A).

There is a genuine dispute of material fact as to which application provided is the true and correct version. The application provided by the creditor is missing information concerning BJRP's other ownership interest, while the application provided by the debtor does not require the same ownership interest information. If the application that the creditor provided is the true and correct application, then the omission of ownership interest could constitute a material misrepresentation because it does not provide an accurate picture of BJRP. However, if the application that the debtor provided is the true and correct application, then the debtor may not have made a material misrepresentation because that application does not require ownership interests below 50% to be disclosed, and the debtor's interest is marked as 70% (Docket No. 26). Because the parties disagree about which application is the true and correct version, there is a dispute of material fact as to whether the debtor made a material misrepresentation to the creditor.

There are genuine disputes of material fact regarding the agreement. The creditor and the debtor have fundamentally different interpretations of what the terms of the agreement mean. Although the creditor and debtor have differing interpretations of sections 2.1, 2.9, and 2.11, these sections constitute written statements respecting BJRP's financial condition and should be evaluated under

11

§ 523(a)(2)(B).  Section 2.10 states that BJRP was not free to enter into additional financing agreements without the creditor's written consent.  This provision does not seem to bar the debtor himself from seeking additional funding, but the creditor argues that it does.  Because the parties disagree about what the terms of the agreement mean, and the limitations they impose, there is a dispute of material fact as to whether the debtor's affirmation of the terms of the agreement constituted a material misrepresentation upon which the creditor could justifiably rely.

The creditor contends the debtor intentionally failed to disclose prior creditors during the application process.  The debtor contends the creditor knew of those other obligations at the time the agreement was executed because the creditor had conducted a lien search (Docket No. 26, Exhibit 3).  Because the parties disagree about what information respecting BJRP's financial condition the creditor was in possession of, there is a dispute of material fact as to whether the creditor could have justifiably relied on such omissions by the debtor.

Finally, the creditor asserts that the debtor made several inaccurate statements respecting the financial condition of BJRP during the funding call, including that (1) BJRP was a profitable and expanding business, (2) BJRP did not intend to seek additional funding, (3) BJRP was not insolvent, (4) BJRP was current with all lenders and creditors, (5) BJRP had only one other funder by the

12

name of OnDeck, and (6) BJRP would use any funds obtained from the creditor for working capital.

Statements 1, 3, 4, and 5 above are oral statements respecting BJRP's financial assets or its financial condition. Oral statements respecting the financial condition of a debtor or an insider are not actionable under § 523(a)(2)(A). This leaves the alleged statements that BJRP would not seek additional funding and would use the funds exclusively for working capital. The debtor denies making such statements. The transcript and recording of the funding call do not include those statements, and the creditor has not alleged or offered any evidence to show that the transcript and recording are inaccurate or incomplete. When viewing the evidence in the light most favorable to the debtor, the creditor has not sufficiently demonstrated that the debtor made any material misrepresentations during the funding call.

Given the remaining disputes of material fact, the creditor is not entitled to summary judgment under 11 U.S.C. § 523(a)(2)(A).

*Count Two—Dischargeability Under 11 U.S.C. § 523(a)(2)(B)*

Section 523 provides in pertinent part:

(a) A discharge under section 727 . . . of this title does not discharge
an individual debtor from any debt—
. . . .
(2) for money, property, services, or an extension, renewal, or
refinancing of credit, to the extent obtained by—
. . . .

13

> (B) use of a statement in writing
> > (i) that is materially false;
> > (ii) respecting the debtor's or an insider's financial condition;
> > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > (iv) that the debtor caused to be made or published with intent to deceive . . . .

To except a debt from discharge under § 523(a)(2)(B), a creditor has the burden of proving each of these elements by a preponderance of the evidence. *FirstMerit Bank, N.A. v. Green (In re Green),* 240 B.R. 889 (Bankr. N.D. Ohio 1999) (citing *Grogan v. Garner*, 498 U.S. 279 (1991)). The United States Supreme Court has recently interpreted the second element—a statement respecting the debtor's financial condition—very broadly, encompassing even a statement about a single asset. *Archer, Lamar & Cofrin v. Appling*, 138 S.Ct. at 1764.

Section 523(a)(2)(B) applies not only to the debtor himself but also to an "insider." Section 101(31)(A)(iv) of the Bankruptcy Code defines the term "insider" to include a "corporation of which the debtor is a director, officer, or person in control . . . ." Section 523(a)(2)(B) therefore encompasses any false statements in writing respecting BJRP's financial condition.

There is a genuine dispute of material fact regarding what information in the application the creditor could have reasonably relied on. The parties do not dispute that BJRP had existing merchant funding at the time the application was submitted

14

by the debtor and that both applications are missing a disclosure of that existing merchant funding. However, there is a genuine dispute of material fact regarding whether the creditor could have reasonably relied on such an omission. The application is a written statement, and the omission of merchant funding is materially false. However, if the creditor was in possession of information indicating that BJRP had existing merchant funding via other means, the creditor could not have reasonably relied on such an omission by the debtor. Because the parties disagree about what other information concerning BJRP's existing merchant funding was available to the creditor, there is a dispute of material fact as to whether the debtor made a material misrepresentation upon which the creditor could reasonably rely.

There are genuine disputes of material fact regarding what the terms of the agreement mean. Section 2.1 states that the debtor had given the creditor accurate information respecting BJRP's financial condition. Section 2.9 states that BJRP was not insolvent or contemplating bankruptcy. Taken together, sections 2.1 and 2.9 may have constituted a misstatement because they portrayed the financial condition of BJRP inaccurately, or they may have merely been an affirmation that the creditor was in possession of accurate information respecting the financial condition of BJRP. Because the parties disagree about what the terms of the agreement mean, there is a genuine dispute of material fact as to whether the

15

debtor made a material misrepresentation upon which the creditor could reasonably rely.

Section 2.11 of the funding agreement states that the daily receipts of BJRP were unencumbered. This provision may constitute a misrepresentation upon which the creditor relied because BJRP had other creditors with perfected liens on assets at the time the agreement was executed. However, the creditor may have known about BJRP's other creditors at the time the agreement was executed via a lien search and therefore could not have reasonably relied on an affirmation of section 2.11. Because the parties disagree about what the creditor knew at the time the agreement was executed, there is a dispute of material fact as to whether the creditor could reasonably have relied on such omissions.

Given the remaining disputes of material fact, the creditor is not entitled to summary judgment under 11 U.S.C. § 523(a)(2)(B).

*Count Three—Dischargeability Under 11 U.S.C. § 523(a)(4)*

Section 523 of the Bankruptcy Code provides, in pertinent part:

(a) A discharge under section 727 . . . of this title does not discharge
an individual from any debt—
. . . .
(4) for fraud or defalcation while acting in a fiduciary capacity,
embezzlement, or larceny . . . .

The Sixth Circuit has defined defalcation to encompass "not only embezzlement and misappropriation by a fiduciary, but also the failure to properly account for

16

such funds." *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (citations omitted).

> A debt is nondischargeable as a defalcation when the preponderance of the evidence establishes: (1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss.

*Id.* (citations omitted). "Fiduciary capacity," as applied in the defalcation provision of § 523, is construed more narrowly than the term is used in other contexts. The defalcation provision applies only to express or technical trusts, and "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. . . . Accordingly, the defalcation provision applies to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 639–40 (citations omitted).

In addition, the Supreme Court recently addressed the state of mind requirement for defalcation under § 523(a)(4) of the Bankruptcy Code in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013). In *Bullock*, the Supreme Court held that defalcation under § 523(a)(4) "includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase . . . one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." 569 U.S. at 269.

17

Embezzlement is defined as the "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172–73 (6th Cir. 1996). "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *In re Bucci*, 493 F.3d at 644 (quoting *In re Brady*, 101 F.3d at 1173).

The degree of fraud required for embezzlement is fraud in fact involving moral turpitude or intentional wrongdoing, for the purpose of permanently depriving another of his property. *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007). Since a debtor is unlikely to admit to acting with bad motives, fraudulent intent may be shown through circumstantial evidence. *Id.* at 116. The court may be aided in its subjective analysis by the presence of traditional indicia of fraud—"e.g., suspicious timing of events, insolvency, transfers to family members or other insiders." *Automated Handling v. Knapik (In re Knapik)*, 322 B.R. 311, 316 (Bankr. N.D. Ohio 2004). The court should review the circumstances surrounding the case and determine "whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." *In re Rembert*, 141 F.3d at 282.

For embezzlement, a creditor may establish circumstances indicating a debtor's fraudulent intent, even if the debtor did not make a misrepresentation or misleading omission on which the creditor relied. *In re Fox*, 370 B.R. at 116. As a result, a creditor does not need to demonstrate justifiable reliance to prove "fraud in fact" under § 523(a)(4).

For purposes of § 523(a)(4), larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 n.3 (Bankr. N.D. Ohio 2003). The original taking of the property must have been unlawful. *See Schreibman v. Zanetti-Gierke (In re Zanetti-Gierke)*, 212 B.R. 375, 381 (Bankr. D. Kan. 1997).

The provision of § 523(a)(4) addressing defalcation is inapplicable to the facts of this adversary proceeding. Defalcation deals only with express or technical trusts and "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. . . ." *In re Bucci,* 493 F.3d at 639–40. In its summary judgment briefing, the creditor has failed to explain how the relationship between the creditor and the debtor constituted a technical or trust relationship. Therefore, defalcation is not applicable.

The provision of § 523(a)(4) addressing larceny is also inapplicable because the original taking was lawful. The debtor came into possession of the funds when

19

the creditor transferred them under the terms of the agreement. Therefore, the original taking of the funds was not unlawful, and larceny is not applicable.

There is a genuine dispute of material fact regarding the purpose for which the creditor entrusted the debtor with funds under the terms of the agreement. Section 2.12 of the agreement states that the debtor entered into the agreement for business purposes and not for personal, family, or household purposes. This provision may have barred BJRP from commingling the funds with other related ventures, or it may have merely limited the use of the funds to legitimate business purposes. Because the parties disagree on the purpose for which the creditor entrusted the debtor with funds, there is a dispute of material fact as to whether the debtor used the funds for an impermissible purpose.

Given the remaining disputes of material fact, the creditor is not entitled to summary judgment under 11 U.S.C. § 523(a)(4).

*Count Four—Dischargeability Under 11 U.S.C. § 523(a)(6)*

Section 523 of the Bankruptcy Code provides, in pertinent part:

(a) A discharge under section 727 . . . of this title does not discharge an individual from any debt—
> . . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

To except a debt from discharge under § 523(a)(6), the creditor has the burden of proving by a preponderance of the evidence that the debtor's conduct was willful

20

and malicious.  *See Grogan v. Garner*, 498 U.S. 279, 291 (1991) (distinguishing

between a creditor's burden to prove validity of a claim and burden to prove

nondischargeability).  The injury must be both willful and malicious.

*See In re Markowitz*, 190 F.3d 455, 463 (6th Cir. 1999); *In re Trantham*,

304 B.R. 298, 306 (B.A.P. 6th Cir. 2004).  A willful and malicious injury must be

"a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that

leads to injury."  *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in

original).

There are genuine disputes of material fact regarding the motivation and

reasoning behind the debtor's discontinuation of payment to the creditor.  The

parties do not dispute that the debtor discontinued payment to the creditor, they

only dispute the motivation and reasoning behind such discontinuation.  The debtor

may have acted willfully and maliciously to harm the creditor and permanently

deprive it of its property, or the debtor may have merely been acting in accordance

with the provisions of the Bankruptcy Code, at least with respect to actions taken

after BJRP filed its bankruptcy petition on September 28, 2018.  Because the

parties disagree on the motivation and reasoning behind the debtor's

discontinuation of payment, there is a dispute of material fact as to whether the

debtor visited a willful and malicious injury upon the creditor.

21

Given the remaining disputes of material fact, the creditor is not entitled to summary judgment under 11 U.S.C. § 523(a)(6).

CONCLUSION

For the reasons stated above, the creditor's motion for summary judgment is denied.  A telephonic status conference will be held in this proceeding at **1:30 P.M. on July 21, 2020**.

IT IS SO ORDERED.

22